May it please the Court, my name is Judith Longquist. I represent the appellants Sylvia Spencer, Vicki Hulse, and Ted Youngberg. With me at council table is my associate Wendy Lillydahl and with us in the courtroom are Ms. Hulse and Mr. Youngberg. This is a vitally important case because it really goes to the heart of our democracy. The founders of this country escaped Europe to seek individual religious freedom. These plaintiffs before you, the appellants before you, seek their individual religious freedom. Under Title VII, in which Congress attempted to balance these two competing interests, the interest of an employee to acquire and retain a job without forfeiting his or her individual religious beliefs versus the right of a truly religious employer to be free from Title VII regulation. Title VII is a broad statement of policy and ways to remediate invidious discrimination based, among other categories, on religion. And it is black letter law, rules of construction, that when you find remedial legislation, any exceptions to that remedial legislation are to be interpreted and construed narrowly. The congressional history of Title VII and the amendments that are at issue here confirms that Congress intended that the religious exception be construed narrowly. Indeed, in the other exception for religious institutions, 703E2, which deals with colleges and universities, they needn't have put that in the legislation if 702 were not to be narrowly construed. Counsel, help me on something that troubles me on this. Yes, Judge Rizzo. We have these multi-part tests, and the more parts there are, the more indeterminate the test is to tell whether something is within the exemption or not. One of the things that troubled me when I went through the test is that some things that seem to make it a religious organization that's exempted from Title VII would also be, if it were not exempted, Title VII violations. For example, we only hire people of a particular religion, and we impose religion on all our employees. Well, if a non-church does that, it's probably a Title VII violation. Right. But if somebody does that, it's evidence they're a church. It seems kind of a strain to me to apply a test that has that paradox in it. Well, and that's one of the reasons. Oh, excuse me. I'd like to reserve five minutes for rebuttal. I meant to say that earlier. Just watch the clock, Counsel. Okay. Thank you. That's one of the paradoxes that Congress, the reason why Congress put the courts as a gatekeeper on the balancing interests, because if anyone can call itself a church, then it is free to oppress any of its employees, not only for religion, but they can say that they don't believe women should work, that's part of their fundamental belief, and thereby discriminate based on sex. One is that it's not calling itself a church, right? I'm sorry? It's not actually calling itself a church. It's calling itself a religious corporation. Well, in the court below, it did call itself a church. It said it was affiliated with a church, which is World Vision International. But second of all, your parade of hobbles is true, because this part of the statute is limited to religious discrimination, right? Well, I was trying to show that just because it's related to religious discrimination does not prevent such an organization from also discriminating against women or homosexuals. It's not limited to that either, so it's a different problem, because this exception won't apply. Well, in this case, it's only religion. That's true. Right.  It would have to be either a BFOQ, which would be hard, or essentially a constitutional sort of something coming from the outside. There's nothing in the statute itself. Or a part of a bona fide religious belief. I understand that, but I'm trying to understand, to say that there is a statutory exception that applies here. Correct. It does not apply to race or sex or anything else. That's true. And therefore, what we have to concern ourselves with is the limits of this exception. Exactly. Yes, I would certainly agree with that. And so the Ninth Circuit has attempted, both in Townley and Kamehameha, to draw a line about how you test. I'm really troubled by the line. It just seems really hard to me. The flip side of the question I asked you before is, unless we give a very liberal reading to what is a religious organization, I don't see how we can avoid an excessive entanglement with religion and religious doctrine in violation of Lemon. For example, you just raised the issue of religious doctrines of a number of churches that might be considered Title VII violations if they weren't religious organizations. Just how deep should we get? For example, with evangelizing activities, suppose the mode of evangelism is to do good works and evangelize by example, rather than to evangelize by words. I can well imagine that that might be the strategy of an evangelizing religious organization. Instead of just telling people to be good Christians, let's show that we're good Christians and show the good works that Christianity causes us to do. Are we to get into their religious doctrine and find out that that's not really the religious doctrine of that particular church, that that religious organization claims to be? I don't know how to do this. No, I think what you have to do is you have to look at the activities, not the beliefs or motivations behind the activities. Religious people and non-religious people do the same thing. One of the briefs said, I can't remember if it was one of the briefs that I read it in, but, gosh, I'm not a Catholic, I'm not a Christian, but I drink wine and I eat bread pretty much at every dinner. When a Catholic drinks wine and eats bread at the Mass, it has a totally different significance. It's the same activity, but it has a totally different significance. It has a religious significance. You can't really understand it unless you get into their doctrine. I think therein lies the line that you don't look at the religious belief, you look only at the activity. But that's no help. That can't be right. Excuse me. Because of the Supreme Court case in Amos, where when you have an undisputedly religious organization, i.e., the Mormon church, running a gymnasium, it seems to be understood, and certainly the Supreme Court understood it, that the fact that the gymnasium itself was a secular activity didn't make a difference. Right, because the Mormon church was indisputably a church. We don't have that situation here.  You seem to be saying that if you're indisputably a church, then any activity you do, it doesn't matter what activities you do. But in determining whether you're a religious organization, if you're not a church, then it does matter? Yes, it does. That's correct. Wouldn't a clearer rule, wouldn't the rule that Townley suggests, you pretty much have to be a church or tantamount to a church, and if you had a line like that, you wouldn't have any intrusion problems because it would be a clear, narrow rule? Exactly. You're saying a bunch of different things. I need to know what you're saying. Okay. You start from Townley as the baseline. If it's a church or substantially similar to a church, a synagogue, etc., then there's no dispute that it's entitled to the exception. Well, counsel, in this case, the trial judge was aware of Townley, was aware of Kamehameha, and looked to Laboon from another circuit, which had a nine-factor test, which presumably is consistent both with Townley and Kamehameha because that circuit recognized that in its opinion. My question is, shouldn't we be looking at least initially at what the articles of incorporation of the presumed religious corporation actually say? For example, when it says in this case, the primary, exclusive, and only purposes for which this corporation is organized are religious ones, including to conduct Christian, religious, and missionary services, etc. Can't we take that into account? You certainly can take it into account, but you have to weigh it. Isn't it pretty impressive in terms of at least the initial evaluation as to whether or not this is indeed a religious corporation or not? I don't think so. When you look at the public, how it holds itself out to the public, which is, after all, where it is playing in this universe. The other documents on its website, for example, and in its flyers to potential donors, clearly describe activities that are secular in nature. So Judge Berzon is correct that first you start with Townley's test. Is this entity a church or a synagogue or something substantially similar? What extent should we take into account the fact that the Internal Revenue Service treats this affiliation as a church? Is that something we can look at? First of all, they don't treat the affiliation as a church. They treat the international as a church. But let me take a look. But these two are affiliated. The statute specifically says that the IRS will accept as a given that somebody calls themselves a church, ergo they're a church. That's written in their regulations. And unless the commissioner has reason to believe that they're not a church, the IRS will only in that circumstance will they say do a further investigation. This is a query to which I don't know the answer, but I have instinct. Does the term religious corporation have some common law or historical background that would be helpful in trying to figure out what it means? I thought it did, but I really haven't looked into it. Well, it's interesting in her deposition, her 30D6 deposition, Vice President Baker says that the government tells them that a religious institution is one that, provides limited religious instruction or requires employees to participate in prayer or religion and proselytizes. What do you mean the government tells them? What does that mean? Well, that's in her deposition. She says that in order to receive federal aid, the 27% of their funding they receive from the federal government. Counsel, you're down to under three minutes. Thank you. Just a reminder. I'm mindful of that. I'm trying to answer the question. So we've thoroughly discussed the IRS rulings in our brief. Judge Scanlon and I would refer you to that argument. Thank you. Good morning. Please, the Court. My name is Steve O'Bannon, and I represent World Vision Incorporated. The issue before this Court is whether a Christian humanitarian organization serving the world's poor out of religious compulsion is an exempt religious organization. Before you get started, I just want to remind you that we've set the clock so that you have 12 minutes and the government has three minutes as an amicus in this case. So I'm going to hold you to your 12 minutes. I understand that, Your Honor. Thank you for that reminder. Could you help me with the question I raised with your adversary? If you're not a religious organization, but you require all your employees to say prayers of a particular religion and you only hire people of a particular religion, you fire people if they turn out not to be of that particular religion, it's all Title VII violations. But the fact that you only hire people of a particular religion, you fire people who are not of that religion, and you require your employees to say prayers of a particular religion is evidence that you are a religious organization. It seems like kind of a paradox to me. I have trouble figuring it out, and I have trouble getting any kind of determinate result out of a six-factor or a nine-factor or a combination of the two tests. How do you do this? I think there is an apparent paradox, you're right, Your Honor, in that element of the test. But I think it's important to remember the Ninth Circuit standard is a multi-factor test, and it looks at the worship element, whether a statement of faith is required of all employees, as one of several elements. I know we've stated that, and I know Le Boon stated that, but I'm still having trouble applying it, and that's why I want help. Well, I think the Court, of course, is free to consider what factors it believes are relevant or would assist it in determining whether World Vision is religious or not. And you look at the nature of the organization before it. But in order to answer that question or to know which factors to use, you have to have some background vision of what it is you're trying to find out. So the question is, what are we trying to find out? Are we trying to find out whether this is an organization that is motivated by religion? Are we trying to find out whether this is an organization whose activities are religious? Are we trying to find out whether the people... What's the background question? I think there are three elements, Your Honor. One is, does it state a religious purpose in its key organizational or other significant documents? I want to know what the factors are trying to prove. All right. I think the factors are trying to prove, is this organization furthering a religious purpose? And how do we determine whether it's furthering religious purposes? I think one of the things we look at is, in this case, it's articles of incorporation or other material documents. This court, in the Kamehameha case... Meaning whether the people who organized it did it for religious reasons, or meaning whether the people who are now running it are doing it for religious reasons, or meaning what? I think both, Your Honor. I think you want to look at its founding, whether it stated a religious purpose. If I run a kosher butcher shop, is that a religious organization? I think if it's... The whole purpose of running a kosher shop is kosher. It looks, well, if the government will let me, I'll make it a non-profit, so I don't have to pay taxes, and I can pay all the money as salary. I think in the Townley case, this court looked at the profit or non-profit status of the mining manufacturer before it, and it said because it's a for-profit and it's creating a secular product, that was important to this court in determining that that was not a religious organization. Justice Brennan, in the Amos case... I don't know what a secular product is. There are a lot of non-Jews who like kosher food because they think it's a good way to eat, but when Jews seek out kosher food and limit themselves to it, it has a religious purpose. I think then that's why you would need to look, Your Honor, frankly, at a series of factors or characteristics of that particular enterprise to determine if, in fact, it is a religious kosher... What I mean is I can't tell what a secular product is. My wife and I used to support poor children abroad through some organization. It wasn't this one. It was a different one. This organization supports poor children abroad. Well, I think several things. One is the courts have looked at this particular type of religious activity of humanitarian work, and the courts have, for example, churches that provide shelters to homeless, food kitchens, and the courts have universally found that that's a religious activity. It seems to me that what Naomi is pointing to, as you're just saying, to say anything a church does is just fine. If it's actually a church which essentially sponsors religious services for people other than their own employees, then fine. If you're a church, do what you want in terms of hiring people who are of other religions. But if you're not a church, then a religious organization needs something that is an organization which provides for the advancement of religious beliefs by people other than themselves, other than the employees, and this one doesn't do that. Well, I think that may not be the bright line that would be as helpful as the court suggests. It's a pretty bright line, and it avoids a lot of the intended problem. What's a church? Plaintiffs haven't offered any definition of what a church, the Ninth Circuit. I just gave you a proposition of what a church is. I think in the case, though, if you go back to the statute, the statute is saying we're going to exempt, and it didn't say churches, it didn't say synagogues, it didn't say mosques. It said religious corporations, societies, and associations. Wouldn't it be a plausible reading of what that meant, what I just said? I mean, Townley also has this interesting legislative history, which demonstrates that the Congress added another statute because they didn't think, because they were thinking that this one was about churches. Well, I would say that this court said in Command Me, and looking back at Townley, that its holding was not dependent upon a reading of the legislative history of the case. It looked at the factors of the mining manufacturer before it. Again, using a multi-factor test, Your Honor, and other jurisdictions have used this multi-factor test to try to make this determination because it's understood Congress meant something more than just churches. Frankly, I found the Laboon analysis, and maybe this is because I know what Jewish community centers really do, quite silly to think that a Jewish community center is a religious organization. And to point to things like they had a mezuzah on the door, I have a mezuzah on the door, I'm not a religious organization. I think you get very far afield once you start looking at those sorts of details. But I think what's important about the Laboon case, for purposes of this case, and I agree, World Vision is not a community center. Laboon collected the factors used by this court and other jurisdictions and simply the district court applied those Laboon factors. But the bottom line is that World Vision, for the most part, I mean I know there's some exceptions to this and they're worth considering, insofar as it's furthering religion, it's furthering its own religion, it's furthering their own religious motivation and those of their employees, and this brings up the paradox that Judge Flanagan is talking about, and not that of the people that they're serving. And I understand that to some degree, in some circumstances, they might proselytize, but they're not a proselytizing organization for the most part. Is that accurate? I wouldn't say that, Your Honor. Judge Clankville made a very interesting point. How does a religious organization proselytize? It may proselytize by taking seriously the injunction of the founder of the Christian religion, Jesus Christ, who said, if you care for the least of these, you serve me. The idea that if you want to promote your faith, you do these kinds of works for the poor and the oppressed. That's in the long tradition of the Christian faith and, frankly, other religions, for that matter, that regard service to the poor and oppressed as a key component of a Christian who is following the injunctions of their God. Counsel, can a Presbyterian hospital affiliated with a Presbyterian church deny residencies to Jewish med school graduates? And can a Jewish hospital, a Maimonides Hospital, affiliated with Jewish organizations, deny residencies to Christian medical school graduates? I think you have to go beyond just the affiliation factor on determining whether that particular hospital was, in fact, a religious organization. How do you tell? I mean, both religions have commandments to serve the sick. Right. I think the St. Elizabeth case... And the motivation for all the support that they get from their churches and synagogues that are affiliated may be to fulfill the commandments of care for the sick. Yeah. It may be, but I think you go beyond just the affiliation of the particular hospital. And what this court did, for example, in the St. Elizabeth case, is what we're advocating this court do in the World Vision cases. And that is, if you look at the factors that this court looked at, it showed that the hospital had no funds from religious sources, there was no profession of faith by employees, there was no requirement that employees participate in religious services. If we're looking at what they do with their own employees, then we're essentially making the violation of Title VII into proof that it's a religious organization. It seems to me you have to wash that whole set of considerations out entirely in terms of proving whether it's a religious organization. I'm not sure you do, Your Honor, for this reason. And that is that religious motivation really is a key factor to look at. Why is this organization pursuing this particular claimed religious purpose? And if you look at World Vision, and I would invite the court to look again at the declaration of Julie Rayner at SCR 6, which details the extensive undertaking by World Vision in spiritual formation of its employees. It's important to World Vision, as it's important to most religious organizations, and certainly churches too, that they are constantly providing a religious reason for their purposes, in this case to help the poor. They have weekly chapel services, worship services. They have daily Bible studies. They're constantly updating their messages so that, for example, they recently stated, the board said, in a world where many institutions have moved away from their Christian roots, we remain committed to living out our faith. Our Christian identity should be reinforced in the text. For World Vision, this is an organization where serving Jesus Christ, it's essential to be doing so out of worship to him for serving the poor. So that's why I think to determine whether an organization is a religious one for purposes of Section 702 is you do need to look at the motivations of the organization. In this case, planets don't contest or challenge that fact, that for World Vision, serving the poor is a deeply religious activity. For Mother Teresa, serving the poor is a deeply religious activity. But the fact that state governments and secular organizations also serve the poor doesn't strip Mother Teresa and her order from undertaking a deeply religious activity. Your time has expired. May I just make one concluding remark, Your Honor? Please. Okay. Planets does represent a direct threat to World Vision's effort to define its religious identity through the people it employs. Planets did not believe in the deity of Christ, a central tenet of the Christian faith, and stopped attending weekly services. Yet it's through a shared faith in the deity and authority of Jesus Christ that World Vision seeks to serve Christ by serving the poor. Therefore, the District Court correctly concluded that World Vision is a religious organization entitled to define itself and its religious mission without state interference. We urge the Court to sustain the judgment. Thank you, Counsel. We'll hear from the United States. Good morning. May it please the Court, I'm Lowell Sturgill from the Department of Justice representing the United States as amicus curiae. In Amos, the Supreme Court explained that the purpose of this exception to Title VII is to accommodate the free exercise interests of religious corporations. So in our view, it makes sense in determining- Question. Are you representing the EEOC? The EEOC- Who are you representing? Part of the United States. I represent the United States. I understand that, but is this the view of the EEOC, which is the expert agency on this, that you're giving us? The EEOC has been consulted on this. I'm not sure that- I'm surprised that there's nobody from the EEOC whose name appears in the brief, and I'm curious about whether this is their position, because it's an odd position for the EEOC if it is their position. I won't- But is it their position? Comment on their- Or is it their position? They have been consulted on this, and- So you're representing their position, or you're not? I'm representing the position of the United States. I don't know- You're not representing necessarily the position of the EEOC, the Equal Employment Opportunity Commission. Well, I'm not exactly sure how to answer that question. They have been consulted whether they want me to- They have not formally put themselves on the brief. I don't know if that's the way they would put it or not. Isn't that unusual? I mean, my experience is that if you want to know what Title VII means, ordinarily it's the EEOC that would come tell us. Well, it's the United States that would come and tell you. The Department of Justice represents the United States, and we consult with the EEOC, and I think that's the typical way this happens in my experience. Right. Is there anything in the record to indicate that this matter was ever brought to the EEOC or the EEOC has ever handled any of these complaints? They have looked into cases like this, and there are cases I think cited in the briefs in which they have addressed whether a religious corporation, whether a corporation was religious or not, and whether there was discrimination or not. Not in this case. But I don't know if they would ask in this case. Okay. But again, I think the baseline, and I think this goes to Judge Burr's on your question, is what you're looking for is whether the corporation before you would have protectable free exercise clause interests, because that's the point of this statute, to accommodate free exercise clause interests. Well, certainly no one is disputing that if this organization wants to operate exactly the way it's operating with regard to its daily worship and so on, that it can do that. So the real question is whether they can impose that as a requirement of employment by them. So that is the narrow free exercise issue, right. It's whether or not they can. There is a free exercise problem if they are not allowed to require their employees to do this, because they can do it themselves. I mean, everybody who wants to do it can do it. Well, sure. To say that they have protectable free exercise interests is not to say what the outcome of the free exercise inquiry would be. No, but I'm just trying to clarify what the free exercise interests would have to be. It would have to be an interest in imposing on their employees as a requirement of employment that you have certain beliefs. That would have to be the free exercise interest. Well, the protectable interest in the free exercise case is whatever activity the entity believes is religiously motivated. And here, they believe that their humanitarian deeds and their worship activities and teaching are all religiously motivated. I understand that, but they can do that. Could you address the concern that I raised? Actually, I have two questions for you. One is the concern that I raised that if an employer discriminates by religion, it's a Title VII violation. But if an employer discriminates a whole lot by religion, then it fulfills two or three or four factors in the multi-factor test and becomes a religious organization that has the right to do that. In my view, I think the discrimination is more of a rebuttal point than it is an affirmative point. For example, if World Vision came in and said that we're a religious corporation, this is very important to us, but then as it turns out, they don't require anybody in their staff to follow these religious principles, then maybe you would be entitled to conclude maybe they're not sincerely religious after all. So I think it's more the fact that they're imposing these requirements down the line. The way you'd solve the paradox is by using it only to rebut a claim to be a religious organization. I think that's the way it makes sense. Now, what about my kosher butcher shop? We used to have a leather shop in town. It's gone now, but the guy had the fish on the door, and he saw himself as his daily work as being a kind of Christian witness in the way he did it. His motivation was religious. His work looked secular. He was doing leather work. I think the key, again, is would it have protectable free exercise interests? The first thing you look at is religious motivation. Then, because it's a corporation, you might look at the founding documents, such as the Articles of Incorporation, and here World Vision's Articles of Incorporation and Bylaws expressly incorporate its statement of faith. It says it is exclusively organized for religious purposes. Then you might ask whether it's a for-profit or a non-for-profit business, because if it's a for-profit business, giving it this sort of exception might raise Establishment Clause concerns, because you're giving somebody a preferential sit in the marketplace. You suggested that it would be a free exercise problem if the government said that you cannot require your employees as a condition of employment to believe something in particular, that that would be a free exercise problem. It could be, right. That would raise free exercise protectable interests of a religious corporation. Now, whether the free exercise clause in the end result would prohibit that or protect it would require analyzing the compelling interest test. The free exercise interest in doing the humanitarian work and doing it with religious motivation and having the worship services at the location and worshiping if you want to worship and so on. But I find it hard to believe that there's a free exercise interest in imposing your beliefs on your employees to do secular work. Again, I think if the religious entity's motivation, sincere motivation, is they believe that this is necessary to the exercise of their communal beliefs, then you would have a protectable interest. I think one really interesting... What does non-profit have to do with anything? It seems to me that you can make $175,000 a year as the executive director of a non-profit or, hopefully, as profit. And the advantage of doing it as a non-profit is you don't have to pay tax on your corporation. I don't see why your tax avoidance mechanism shows that you're religious. It doesn't really go to that. But I think if you look at Justice O'Connor's opinion in Amos, what she explains is that if a corporation is for profit, giving it this kind of exception may give it an improper competitive advantage in the marketplace and hence raise establishment clauses. Thank you, counsel. Our questions have taken you way over time. I'm sorry. Thank you very much. Thank you very much. Ms. Lundquist, you have some reserve time. Thank you. I don't want to take the time to... Oh, there we go. Let me ask you, why is this any different than the Salvation Army? Because the Salvation Army is, in fact, directly affiliated with the Christian Church of America. And that's the only difference? Oh, no. There's a lot of other differences, but that's the primary difference, and it goes to the Tomley test. What are the others? It seems a lot like the Salvation Army. Well, the... By the way, I assume that you agree that the Salvation Army is a religious corporation. I'm forced to concede that because the courts have so held. Right. And, of course, none of this was raised in the court below, but the Salvation Army requires that every single manager in an entity operated by the Salvation Army be a member of the core and ordained or admitted into the church. Well, how is that any different than the requirement that the employees have to subscribe to the statement of faith, we believe in the Bible, we believe there's one God, and all of that sort of thing? Well, because you go back to Tomley. It's closely affiliated with the church. The question is, what does that mean? First of all, doesn't the Salvation Army actually conduct religious services for external... They do. Other than themselves. For the community. Yes. Other than themselves. Correct. And they have ministers who do that. They have ministers who are part of the Army Corps, yes. Here we have seven ministers out of 1,200 employees that's in the record. And I do want to address your... Do the ministers operate as ministers, or do they happen to be ministers who are working for the organization? In World Vision? We don't know. That's not part of the record. Remember, this is a 12B6. We weren't able to do full discovery. Judge Kleinfeld, your paradox, I think, is... The answer to your paradox is that the test should be the activities in providing these charitable services. What are those activities? And are those activities conditioned on religious observance? So here you have World Vision, a multibillion-dollar organization, providing services to the poor and the needy around the world, but they do not require as part of the recipients any religious affiliation or any religious participation. The recipients don't have to pray. Correct. But the givers of the food and the services do have to pray. No, they don't. And see themselves as bearing witness. No, the givers are the Seattle School District, the Highline School District, numerous corporations. Granted, there are some churches there, but there are also some non-churches. About 75% of the money came from churches and church organizations. No, of the cash comes. They also get grants and in-kind, and they get in-kind from corporations in the form of food and supplies and et cetera, et cetera. Over 50% of the contribution come from non-religious sources. Counsel, would we be here today if the employer were World Vision International instead of World Vision, Inc.? No, because we'd still have to determine whether or not they were a church, because the only reason in the record as to why they are a church is this IRS ruling, and we've shown that that is not the same policy. But the Title VII term is not church. It's religious corporation, isn't that correct? Because it uses that terminology is what gave rise to Townley. But more than that, we don't know anything about this larger umbrella organization, so isn't the right answer we don't know because we just don't know anything about it? Correct. The only thing we know is that they have this IRS ruling, the international organization. And I did want to follow up on Amos, Judge Berzon, because Amos shows the breadth of Amos shows exactly what happens when you call something a church. That is the reason why Congress intended these courts, your courts, to be gatekeepers on this narrow exception, because once somebody is designated as a church. And the clerics and everybody else. I didn't hear you. Because once it's a religious organization, the janitors and the clerics and everybody else can be required. Right. Can be discriminated against. Finally, I want to answer your question. You're calling it discriminated against. The concept is that they can be required to be a member of the religion because there's a religion. Right. Or fired if they refuse. Kelsey, you can go ahead and answer. You're over time, but I gave the other side a little extra time, too. Thank you. I want to answer your question about the EEOC judges scandal. Oh, right. They did file charges with the EEOC. The EEOC did not conduct an investigation but issued a right to sue letter. So they exhausted their remedies. Are there other opinion letters by the EEOC that go to this general problem that are informative in some way? I don't know. The problem here is that both opposing counsel here have suggested that the courts look at motivation. Some of the briefs suggested you look at bona fides of religious belief. The more the court gets involved in looking at religious or not religious motivation or bona fides, the more you get entangled with religion. So you need to find a standard that doesn't require the courts to weigh motivation or belief but activities, and that's what this court has routinely tried to do. But included in that standard might very well be articles of incorporation and consistent patterns of required activities. Correct, as there is in this record. But also in this record are a plethora of records that they hold themselves out to the public as a humanitarian rather than a religiously active organization. In their ads when they solicit money, do they say they're Christian? They say they're a Christian humanitarian organization. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn. Hear ye, hear ye. All persons having had business with the Honorable Judges of the United States Court of Appeals for the Ninth Circuit will now depart for this session. Now stands adjourned. Thank you.
judges: O'scannlain, Kleinfeld, Berzon